**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | **Criminal No. 19-150 (TNM)** |
| | : | |
| **v.** | : | |
| | : | |
| **BELINDA McKENZIE,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully provides the following memorandum in aid of sentencing.  For the reasons outlined below and considering the entire record in this matter, the government recommends a sentence within, but at the low end, of the advisory sentencing guidelines.

### I.  Procedural History

On May 14, 2019, the defendant, Belinda McKenzie ("the defendant"), waived indictment and pleaded guilty to one count of Mail Fraud (18 U.S.C. § 1341).

### II.  Factual Background

The defendant was a Family Support Worker at Catholic Charities for the Archdiocese of Washington ("Catholic Charities"),[1] working in the Emergency Rental Assistance Program ("ERAP").  Between 2015 and 2017, the defendant, along with others, recruited family members, neighbors, and friends, and used their information, and that of others, on fraudulent ERAP applications stealing $234,249.00 in ERAP funds administered by Catholic Charities (and from DC government which finances the program).[2]

---

[1] Catholic Charities for the Archdiocese of Washington is primarily located at 924 G Street, NW, Washington, D.C.

[2] ERAP is funded by the DC Department of Human Services.  No federal grant money is involved.

Catholic Charities is one of six agencies that administers the ERAP program for the District of Columbia's Department of Human Services.  Each month, Catholic Charities conducts telephone intake for those seeking rental assistance, but is only able to accept the first 25-30 qualified applicants (meaning those meeting income limits, DC residency, and lack of rental assistance in the prior 12 months).  Applicants are required to attend workshops on budgeting skills and tenant responsibilities / rights.

Once the applicants complete the training, they are accepted in the ERAP program and meet with a Family Support Worker whose job is to gather supporting documentation. During this phase, Catholic Charities requires rigorous vetting of both the qualifications of the landlord and the need of the tenant.  Those listed as "landlords," must actually own residential real estate; the tenants must actually be at risk of eviction.  Catholic Charities demands a large amount of detailed supporting documentation such as:

- rental ledgers notarized by the landlord;

- copies of verified complaints or "writs of possession" from the Landlord and Tenant Branch of DC Superior Court;

- utility bills with the tenants' names and addresses;

- copies of tenants' driver licenses and children's birth certificates; and

- either evidence of disability assistance or tenant employment reference letters (to show an ability to make future rental payments).

As a Family Support Worker, the defendant's job was to interview tenants about their financial needs, gather personal identifying documentation regarding the individuals, collect rental leases and notarized ledgers listing unpaid rent, and secure reference letters concerning the tenants' future source of income, among others.  The defendant had access to legitimate ERAP assistance files though her position as a Family Support Worker.

After an anonymous complaint to Catholic Charities, an outside auditing firm identified approximately 42 ERAP files (all processed by the defendant) comprising of payments to approximately 16 landlords on behalf of 31 tenants.  In truth, the listed tenants were not at risk of eviction, did not rent from the listed landlords, and instead of assisting families from eviction, the emergency rental money was shared with the co-schemers involved in the fraud.

Each of the fraud files contained documentation from the Landlord and Tenant Branch of DC Superior Court suggesting the tenants were at risk of eviction.  However, when the government researched the court case numbers from the suspect files and cross checked the court case numbers against the docket from D.C. Superior Court, it was apparent that each court "eviction" document in the suspect files was altered from a legitimate ERAP file (which would have been accessible to the defendant, through her job as a Family Support Worker).  Similarly, when investigators compared the landlords' notarized rent ledgers, they found fraudulent ledgers copied from ledgers from the legitimate ERAP files.[3]  The government compared other backup documents, such as the utility bills, clinical verification of disabilities, and employment reference letters, discovering that the fraudulent files used forgeries from the legitimate documents to "paper" the requests for the fraudulent tenant assistance.

Armed with an array of falsely manufactured "supporting" documentation, the defendant tricked Catholic Charities into issuing approximately 42 checks totaling $234.249.00 to individuals who posed as landlords, on behalf of individuals who posed as tenants at risk of eviction from the "landlords'" property.[4]  The defendant recruited the "landlords" with the help of others.  Many of the "tenants" were likewise brought into the scheme by the defendant and her co-

---

[3] Templates of these rental ledgers were found on the defendant's work email.

[4] Most landlords received more than one check.

3

schemers, although some tenants have told law enforcement officers that they were unaware that their information was used to justify emergency rental payments.  After swindling Catholic Charities into issuing checks to the "landlords," the defendant and others instructed the "landlords" to cash the ERAP checks[5] and relinquish the majority of the funds obtained from the checks, benefitting others, and to a much smaller degree, the defendant.

### III. Government's Position on Sentencing

#### A.  Sentencing Guideline Calculation

The following advisory sentencing guideline calculation:

| U.S.S.G. § 2B1.1(a) | Base Offense Level | 7 |
| U.S.S.G. § 2B1.1(b)(1)(G) | Specific Offense Characteristics – Loss in excess of $150,000 ($234,249.00) | 10[6] |
| U.S.S.G. § 3B1.1(b) | Managerial Role in the Offense | 3 |
| U.S.S.G. § 3E1.1(a) | Acceptance of Responsibility | -2 |
| U.S.S.G. § 3E1.1(b) | Timely entry of a plea of guilty | -1 |
| | Total: | 17 |

With a criminal history score of 0, the defendant's Federal Sentencing Guideline calculation advises a sentence of 24 - 30 months.

#### B.  Factors Under 18 U.S.C. § 3553(a)

#### 1.  Need for the Sentence to Afford Adequate Deterrence to Criminal Conduct

The defendant, as the "insider" for this embezzlement scheme, was the lynchpin to the scheme's success. Without her complicity, there would be no fraudulent files requesting ERAP payments, and no theft.  Forty-two fraudulent files seeking over $234,000 on behalf of 31 "tenants"

---

[5] Rarely, the purported landlords deposited the checks into their account (in lieu of cashing the checks) and then promptly withdrew cash.  There is no documentary evidence of the funds from these ERAP checks being shared with the defendant.

[6] The government mistakenly noted in the plea agreement that for loss amounts in excess of $150,000, only 8 levels instead of 10, were added to the Offense Calculation.  The presentence report writer corrected the error.  *See* PSR at paragraph 26.

renting from 16 "landlords" required a plethora of false and forged documents, all created by the defendant.  The scheme itself spanned almost 2½ years, and only ended when, after receiving an anonymous complaint regarding the defendant's collusion with a specific landlord, Catholic Charities placed the defendant on administrative leave pending an internal investigation.

Deterrence, both specifically for this defendant and for others similarly entrusted by non-profits, is one of the goals of sentencing.[7]  The defendant, hired by Catholic Charities in March of 2015, wasted no time before beginning to embezzle DC government monies entrusted to her employer.  In April of 2015, just *one* month after being hired by Catholic Charities, the defendant began processing fraudulent applications, and she continued the scheme until September 2017, less than *one* month before being put on administrative leave.  A sentence within the advisory guideline range is necessary for the goal of deterrence.

### 2.   Need for the Sentence to Reflect the Seriousness of the Offense

"Housing is a vital component of Washington, DC's inclusive growth,"[8] given that "safe and stable housing supports physical, financial, and emotional health."[9] Many DC residents are spending a greater portion of their income on housing[10] with fair market rents requiring long work days for lower income residents.[11]  Against the backdrop of the dire consequences of eviction on the stability of children's lives and schooling, the serious of the defendant's crime is apparent.  As stated earlier, Catholic Charities could only assist 25 – 30 applicants each month.  The theft of

---

[7] *See* 18 USC Section 3553(a)(2)(B).

[8] *Housing Equity Report, Creating Goals for Areas of Our City*, October 2019 by the District of Columbia Office of Planning, ("Report") at 2.

[9] *Id.*

[10] *Id.* at 1.

[11] *Out of Reach 2019*, National Low Income Housing Coalition (noting that 80 work hours per week at minimum wage are required to afford a one-bedroom rental priced at fair market rent in the District of Columbia).

$234,000 from ERAP funds meant that there was $234,000 less to assist those who truly needed assistance to avoid eviction.   In its Victim Impact Statement, Catholic Charities notes the consequences of the offense, saying "we are very troubled that Ms. McKenzie's actions diverted the programs limited resources from individuals that truly needed the rental assistance."   The seriousness of the offense suggests a sentence within the advisory guideline range.

### C.  Restitution

In its Victim Impact Statement ("VIS"), Catholic Charities states that it administered the ERAP program on behalf of the DC government.[12]   Therefore, restitution of the $234,249 is payable to:

> Government of the District of Columbia
> Office of the Chief Financial Officer
> 1350 Pennsylvania Avenue, NW, Suite 203, Washington DC 20004
> Phone: (202) 727-2476. Email: ocfo@dc.gov

Also in its VIS, Catholic Charities requests restitution of $45,000 to pay for the external investigation of the ERAP files following the anonymous complaint.[13]

### CONCLUSION

The defendant's forged paperwork in the fraudulent ERAP application files backstopped the ruse that the "tenants" held lease agreements with the "landlords" and were months behind on rent, when, in truth and in fact, there were no evictions and there were no families at risk of homelessness. For the defendant, the crime would not have been faceless; her job as a Family

---

[12] An attorney for Catholic Charities, in separate correspondence, requested that restitution payments for the stolen ERAP funds be directed to DC Government.

[13] Government counsel asked Catholic Charities, through its legal counsel, to provide documentation of the payment and to explain its position that the outside accounting firm's fees are reimbursable expenses under 18 USC § 3663A(b)(4) (in particular, how the expense was "incurred during participation in the investigation or prosecution of the offense" as opposed to supporting a personnel action).  Government counsel will forward to Court and counsel any further information received justifying Catholic Charities' request.

Support Counselor put the defendant in the position of seeing the need for emergency rental assistance every day. In spite of this daily reminder, the defendant chose to steal from the program.

The government recommends a sentence at the low end of the advisory guideline range.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
for the District of Columbia

By:    \_\_\_\_/s/_____
VIRGINIA CHEATHAM
Assistant U.S. Attorney
**Virginia.cheatham@usdoj.gov**
Bar No.411980
555 4th Street, N.W. Room 5836
Washington, D.C. 20530
(202) 252-7820

CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2020, a copy of the foregoing sentencing memorandum was served via electronic case filing to counsel for the defendant.

_____/s/_____
Virginia Cheatham
Assistant U.S. Attorney